**PACIFIC NAT. CO. v. WELCH, Former Collector of Internal Revenue.**

No. 8394.

Circuit Court of Appeals, Ninth Circuit.

Aug. 2, 1937.

Melvin D. Wilson, of Los Angeles, Cal., for appellant.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Frederick W. Dewart, Sp. Asst. Attys. Gen., and Lester L. Gibson, of Washington, D. C., and Peirson M. Hall, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., all of Los Angeles, Cal., Bureau of Internal Revenue, for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment of the District Court in favor of defendant in an action brought by appellant herein for refund of income taxes for the calendar year 1928. Trial was had to the court upon stipulation waiving jury; no opinion was handed down, but the court made special findings of fact and conclusions of law and judgment was entered accordingly.

The assignments of error are numerous; in our judgment but two questions were raised on appeal: (1) Whether a taxpayer, having filed its income tax return reporting sales contracts for parcels of real estate sold as completed transactions and treating the sales price as having been received, may change its method and later amend the return and report such sales on the installment basis and demand a refund of taxes paid, or is it bound by its choice made in its original return; and (2) if it be held that the taxpayer is bound by its original return, whether the trust, which held the property and to which appellant was the

sole beneficiary, was taxable as an association and, therefore, the return filed by the appellant for the year 1928 was not a proper one in that it should not have included the income of the trust.

The second point, since the argument in this case, has been decided adversely to appellant's contention by the Supreme Court in A. A. Lewis & Co., et al. v. Commissioner of Internal Revenue, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. ——.

Some time prior to 1928 the appellant purchased a tract of land in Culver City, county of Los Angeles, Cal., paying part of the purchase price in cash and giving its promissory notes for the balance. This property was conveyed to the Pacific National Bank in trust as trustee for trust No. P.T. 46, and under the trust indenture the plaintiff became the sole beneficiary of said trust. The tract was subdivided, streets laid out, etc. Contracts were entered into with selling agents, prices fixed, and sales proceeded with. Most of the lots were sold on contract, 25 per cent. down and the balance over a period of time.

The appellant was a holding and investment company, originally incorporated with a capital stock of $2,000,000, which was increased in 1928 to $4,000,000. In 1928 it owned over 80 per cent. of the stock of Pacific National Bank, as well as over 95 per cent. of the stock of Pacific National Building Corporation. This latter corporation and appellant filed separate corporation income tax returns for 1928. The officers of the appellant were officers of the Pacific National Bank.

The trust indenture, Trust No. P.T. 46, was a security transaction or device, containing recitals that four promissory notes had been made by appellant in favor of one H. W. McLeod for the total sum of $300,-000, each note bearing the words, "This note is secured by a certain declaration of trust issued by The Pacific National Bank of Los Angeles, * * * dated July 1st 1927, and known as Trust P.T. 46 and is subject to the terms and conditions thereof." It was further provided in the trust indenture that "The entire sales price of every lot or parcel of said Trust Property, together with all interest on each contract of sale shall be paid to the Trustee [Pacific National Bank]." All contracts of sale or deeds covering any part of the trust property were to be executed by the trustee.

In the 1928 federal income tax return the appellant reported an income of $89,-677.34, and this income was made up as follows:

| Income from Trust No. P.T. 46 | | $137,007.17 |
|---|---|---|
| Less: | | |
| Loss of Taxpayer from its 1928 operations exclusive of the trust income | $11,480.37 | |
| Statutory net losses as follows | | |
| 1925 | 1,990.77 | |
| 1926 | 9,708.66 | |
| 1927 | 24,150.03 | 47,329.83 |
| Net income as reported | | $ 89,677.34 |

The tax was paid in quarterly installments.

The $137,007.17 representing the income of Trust P.T. 46, Pacific National Bank, trustee, resulted from the sale of subdivision lots, and in the determination thereof said sales were treated as deferred payment sales not on the installment plan, and the obligations of the purchaser were treated as having a fair market value equivalent to their face value.

On February 26, 1931, the appellant filed a claim for refund of the tax paid of $10,761.28 upon the ground that "Profit from sales of real estate in a subdivision trust were erroneously reported as based on closed sales, although the sales were made on the installment basis and proceeds of sales and collections were allocated by the trustee." An amended claim was filed on April 4, 1932, for refund of said tax, upon the ground that "Claimant now wishes to amend the claim by showing that the subdivision trust is a separate entity, an association taxable as a corporation, that it did not file a consolidated return with claimant in 1928, and that its 1928 income can not be included in claimant's income or return. Accordingly, the income of the subdivision must be excluded from claimant's 1928 income, and the tax paid thereon by claimant, refunded. This situation prevents the doctrine of estoppel from applying to this case." The trustee did not file a fiduciary or other income tax return for the years 1927 or 1928.

On or about May 17, 1932, the Commissioner of Internal Revenue rejected that portion of appellant's claim for refund which pertained to the grounds set forth in this suit. The Commissioner allowed appellant's claim for refund in the amount of $1,091.39, together with interest thereon, based on other grounds not material here. Thereafter the appellant filed the instant suit.

At the trial, F. W. Shelton, who was secretary of the appellant corporation in 1928,

testified that in computing the income of the trust for 1928 he treated the sales contracts as being the equivalent of cash. He said he did not know that the 1928 Revenue Act (45 Stat. 791) permitted sales to be reported on the installment basis when 25 per cent. of the selling price was received in the year of sale; that he understood that the sale had to be treated as a cash or completed sale; that he did not know that sales were permitted to be reported at their fair market value; that he did not know that where the down payment exceeded 40 per cent. of the selling price the law permitted the collections to be treated as return of capital until the cost had all been collected, and to then treat the subsequent collections as all income; that he prepared the 1926 and 1927 income tax returns; that he knew that the returns should be prepared on the basis of the method used in keeping books of the reporting company; that he had no consultant advice in the preparation of that return. He further testified that there was a gross profit in the trust of $306,181.69 for the year 1928, with commissions paid of $182,711.49, and expense on the "Speedway" property of $4,044.56, and that in calculating the income of the trust for 1928 he included the sales that were made in 1927. The trustee kept books of the activities of Trust No. P.T. 46 and furnished the witness with the figures for his ledger. He made the 1928 return entirely from the books of the appellant.

It was shown by this witness' testimony that there had been an assignment of many assets of the appellant to the Transamerica Corporation, but that this claim for refund was expressly excluded from the assignment; that the Guarantee Trust Company later became trustee for the trust here involved.

William H. Elwell, a witness for appellant, testified that he was engaged in the real estate business and had been contacted by an official of the Pacific National Bank to make an estimate of what Culver City Park [Trust No. P.T. 46] could be sold for; that he prepared a map and set prices on the individual lots, so as to exceed the amount of money the bank desired to receive from the sale of the tract; that he had sign boards painted and partly organized a sales force. He was then informed that certain property included in the map was not for sale and that it was desired to obtain the same amount of money from the smaller area. He attempted to sell the lots at the higher figure, but did not care about going on with the contract. A Mr. Frank Brick then took over the sales contract. The witness said that Brick was reported to have used "high pressure closers"; that Brick gave free lunches and had lectures delivered to prospective lot buyers; that, in his opinion, the lecturers were not always truthful; that the lots were sold for prices two or three times higher than the prices he thought they would sell for. He further testified that he did not think the contracts with the buyers were worth their face value; that he thought the fair market value was one-third to one-half of the selling prices, reduced by the cash down payments.

Mr. Harry Kahan, a certified public accountant, had audited the books of appellant in 1930 and prepared the claim for refund filed February 26, 1931. He testified that the books of appellant were kept strictly on a cash basis; that he prepared from the records of the trustee a summary of the condition of the contracts for sale of lots of the trust as of December, 1928. This summary was offered and received in evidence as Exhibit No. 9, over objection and exception of defendant-appellee. Another summary prepared by the witness was offered and received in evidence as Exhibit No. 10, also over objection and exception. Exhibit No. 9 indicated that 60 per cent. in number, 62 per cent. in amount, of the sale accounts were paying accounts; and that 40 per cent. and 38 per cent. of these accounts were delinquent, respectively. It also indicated that 6⅗ per cent. of the accounts (in amount) had been canceled and 7⅘ per cent. had been paid in cash. Exhibit No. 10 demonstrated that the commission on sales in 1927 was 31.38 per cent., and in 1928, 32.72 per cent., of the selling price, and that the ratio of profit to selling price in these years was 14.68 per cent. and 14.26 per cent., respectively.

Copies of fiduciary income tax returns for Trust No. P.T. 46 for the years 1927 and 1928, filed on January 3, 1935, were offered in evidence and objected to by counsel for the defendant. The objection was overruled, exception noted, and the documents marked Exhibit No. 11. It appeared, from this exhibit that there was a net income in the trust for the year 1927 of $4,821.43, and for the year 1928 of $15,073.46.

During the progress of the trial a verbal stipulation was entered into, as follows: "May it please the Court, the defense is

agreeable to a stipulation to the effect that should the court decide either that the plaintiff is entitled to change its method of computing income from the completed sale basis to the installment or deferred payment sale basis, or it should be decided that the trust should have reported the income on the basis of an association taxable as a corporation, and should have filed a separate return as a corporation instead of as a trust, that there would be some amount of refund due. They have reserved the right to endeavor to compute that without taking time now. * * * And further, that if a change of basis was granted, that no income would escape taxation in subsequent years by reason of the Statute of limitations; I do not wish the stipulation to be taken as abandoning our contentions as to the right to change the basis."

In support of its first proposition the appellant argues that its "action in including in its return the income of the trust computed on the completed sale basis constitutes a mistake and not an election."

 The taxpayer reported the sales as deferred payment sales, just as they were reflected upon its books. It indicated by its original income tax return for the year 1928 that it chose to report the sales as completed transactions, rather than as installment contracts. By filing its return on that basis it made a choice or election and it may not, at a later date, when it appears to its advantage to do so, change the method of making its report. Rose v. Grant (C.C.A.5) 39 F.(2d) 340, 341; Safety Electric Prod. Co., Inc., v. Helvering (C.C.A.9) 70 F.(2d) 439, 441; Alameda Inv. Co. v. McLaughlin (C.C.A.9) 33 F.(2d) 120; U. S. v. Pettigrew (C.C.A.9) 81 F.(2d) 666. "The courts have uniformly held that the right of choice or election to file one or another sort of return is exercised by filing the return." Radiant Glass Co. v. Burnet, 60 App.D.C. 351, 54 F.(2d) 718, 719. "The present case is not different in principle from those in which a taxpayer, having the right to file either one of two different sorts or returns, makes his choice and files his returns accordingly. It is settled that he cannot afterwards change. Radiant Glass Co. v. Burnet, * * * [supra]. *This is so even where the taxpayer, under a mistake of law, was unaware that he had the right to choose.* Buttolph v. Commissioner, 29 F.(2d) 695 (C.C.A.7)." Moran v. Commissioner of Internal Revenue (C.C.A.1) 67 F.(2d) 601, 602. (Italics our own.)

 The proposition that "the trust is an association whose income should not have been included in appellant's return but should be reported in a separate return," as indicated above, has been disposed of by the ruling of the Supreme Court in A. A. Lewis & Co. et al. v. Commissioner of Internal Revenue, supra, and requires no further discussion.

The findings of the trial court are supported by substantial evidence and are sufficient to sustain the judgment.

The judgment of the District Court is affirmed.