**BOONE COUNTY COAL CORPORATION v. UNITED STATES.**

**No. 4808.**

Circuit Court of Appeals, Fourth Circuit.

July 25, 1941.

Frederick L. Thomas, of Charleston, W. Va. (Price, Smith & Spilman, of Charleston, W. Va., on the brief), for appellant.

Arthur L. Jacobs, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, and S. Dee Hanson, Sp. Assts. to the Atty. Gen., Lemuel R. Via, U. S. Atty., of Huntington, W. Va., and Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment entered February 12, 1941, by Judge Barksdale, sitting in the United States District Court for the Southern District of West Virginia dismissing, in favor of the appellee, the action filed by the appellant (hereinafter called the taxpayer) for the recovery of corporate income and excess profits taxes in the aggregate principal amount of $5,531.86, plus interest, paid for the calendar year 1935.

The taxpayer, a West Virginia corporation, with lands in Logan County, West Virginia, during the calendar year 1935, incurred expenses of $42,664.33, representing intangible drilling and development costs in connection with the drilling of gas wells on its property.

On taxpayer's books of account for the year ending December 31, 1935, the amount

accumulated in the construction accounts of taxpayer's independently drilled wells was entered in a capital account by taxpayer's bookkeeper without consultation with, or specific direction from, any officer of the company. It had been customary to capitalize each and every sum spent by taxpayer in the development of coal properties, and the bookkeeper similarly treated on taxpayer's books all the cost of developing gas properties. He acted in good faith, but without specific direction and without knowledge of the election afforded gas producers by Article 23(m)-16 of Treasury Regulations 86. Neither he nor any officer of the taxpayer corporation was familiar with the gas production business.

When, during the first quarter of the year 1936, the taxpayer's accountant prepared the taxpayer's 1935 income tax return, he prepared it from the data appearing on the taxpayer's books, which showed the intangible drilling and development costs as capital account and not as expenses. There were no sales of gas and no income from taxpayer's independently drilled wells during the year 1935. The president of the taxpayer seems to have been under the impression that, inasmuch as there was no income from the gas properties during the year in question, it was unnecessary at this time to determine the question of whether the intangible drilling costs should be treated as capital or expenses. At all events, the accountant did not attach to the 1935 return any statement indicating a clear election as to the treatment of intangible drilling costs, as prescribed by Treasury Regulations 86, Art. 23 (m)-16 (d).

In the latter part of October, 1936, the officers of taxpayer and its advisers held a conference, at which it was decided that the taxpayer should charge the intangible drilling and developing costs of its independently drilled wells to expenses rather than to capital. The bookkeeper of the taxpayer was, accordingly, ordered to change the books in conformity with this decision. It was further decided at this conference that an amended return for the year 1935 should be filed with the Collector of Internal Revenue, in which amended return there should be included a clear statement of the taxpayer's election to treat these intangible drilling costs as expenses and not as capital. In May, 1937, a special meeting of the board of directors of the taxpayer was held at which a resolution was unanimously adopted, approving the conclusions reached at the conference just mentioned. And, at this meeting of the directors, an amended tax return for the calendar year 1935 was submitted, approved, and ordered to be filed with the Collector of Internal Revenue. On May 13, 1937, the amended return was filed with the Collector of Internal Revenue. The amended return, however, was untimely in that it was filed after the expiration of the statutory period for filing the return, and after the expiration of any period of time for which an extension for such filing could legally have been granted by the Commissioner of Internal Revenue.

There is thus presented for our determination only one question: whether the taxpayer, by not deducting the so-called intangible costs of drilling and developing its gas wells in its original tax return for the year 1935, and by treating these drilling costs in the original return as capital items, thereby made an election to charge such costs to capital account, and consequently was precluded from deducting them as operating expenses in an amended return filed more than a year later, after the time in which an amended return could be filed. In this connection, as we have indicated, the original return was prepared by the taxpayer's tax accountant according to the taxpayer's books, on which the drilling costs in question were all treated as items of capital account. Judge Barksdale in the District Court answered this question in the affirmative and dismissed the taxpayer's action. We think the conclusion he reached is quite sound.

The apposite federal statute provides that, under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary of the Treasury, there shall be a reasonable allowance for deductions for depletion and depreciation of improvements according to the peculiar conditions in the case of oil and gas wells. Section 23(m), Revenue Act of 1934, 26 U. S.C.A. Int.Rev.Code, § 23(m). The pertinent interpretive regulations promulgated pursuant thereto (Article 23(m)-16, Treasury Regulations 86) provide:

"(a) (1) * * * All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to

capital account. Such expenditures have for convenience been termed intangible drilling and development costs.

\* \* \* \* \* \*

"(d) This article does not grant a new option or election. Any taxpayer who made an election or elections under article 243 of Regulations 74 or under article 223 of Regulations 69 or under article 236 of Regulations 77 is, by such election or elections, bound with respect to all optional expenditures whether made before January 1, 1934, or after December 31, 1933, in connection with oil and gas wells. Any taxpayer who has never made expenditures for drilling oil or gas wells prior to the first taxable year beginning after December 31, 1933, must make an election as to intangible drilling and development costs in general in the return for the first taxable year in which the taxpayer makes such expenditures, and a taxpayer who has never made expenditures for a non-productive well prior to the first taxable year beginning after December 31, 1933, must make an election as to the cost of such wells in the return for the first taxable year in which the taxpayer completes such a well. Any election so made is binding for all subsequent years. A taxpayer is considered to have made an election in accordance with the manner in which the respective types of optional items are treated (1) in his return for the first taxable year ending after December 31, 1924, in which optional expenditures of the respective types are or were made, or (2) in an amended return filed between June 18, 1927, and December 18, 1927, in accordance with Treasury Decision 4025. Any taxpayer who has made expenditures for optional drilling and development costs must attach to his return for the first taxable year beginning after December 31, 1933, and for each year thereafter a clear statement of his election under each of the options, together with a statement of the time at which, and the manner in which, such election was made."

We do not deem it necessary to discuss the question here involved at any great length because we are convinced that this question is very definitely and conclusively settled by the recent case of J. E. Riley Investment Company v. Commissioner of Internal Revenue, 311 U.S. 55, 61 S.Ct. 95, 96, 85 L.Ed. 36. We quote the major part of the opinion of Mr. Justice Douglas in the Riley case:

"Petitioner is engaged in the business of mining gold at Flat, Alaska. The winter mail service to and from that remote place was so uncertain and slow that, in order to avoid delinquency in income tax returns, petitioner's officers were accustomed to use the forms for an earlier year. Consequently petitioner's original return for the calendar year 1934 was filed on a 1933 form which had been mailed to petitioner by the Collector at Tacoma, Washington. This return was executed on January 2, 1935, and reached Tacoma on January 29, 1935. When it was executed petitioner did not know of the provision in the Revenue Act of 1934, 48 Stat. 680, allowing percentage depletion. But petitioner did know that unless the law had been changed it was not entitled to depletion, as it had no basis for cost depletion. The Collector in sending the 1933 forms had not advised petitioner with respect to percentage depletion. And it was found that if petitioner had known of the statutory provision for percentage depletion, it would have elected to take advantage of it. Petitioner first actually learned of the provision in August, 1935. On March 3, 1936, petitioner filed an amended return for 1934 upon which a deduction of percentage depletion was taken; and it asked for a refund. The Board of Tax Appeals, 39 B.T.A. 1243, upheld the Commissioner's ruling denying percentage depletion and the Circuit Court of Appeals affirmed. [9 Cir., 110 F.2d 655.]

"Sec. 114(b) (4) of the 1934 Act [26 U.S.C.A. Int.Rev.Code, § 114(b) (4)] required the taxpayer to elect in his 'first return' whether the depletion allowance was to be computed with or without regard to percentage depletion. The method so elected is applicable not only to the year in question but to all subsequent taxable years.

"We think that petitioner's amended return, filed on March 3, 1936, was not a 'first return' within the meaning of § 114(b) (4). By § 53(a) (1) of the 1934 Act, 26 U.S.C.A. Int.Rev.Code, § 53(a) (1), the return was due on or before March 15, 1935. By § 53(a) (2) the Commissioner was empowered to grant a reasonable extention for filing returns but, so far as applicable here, not exceeding six months. Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340, would compel the conclusion that had the amended return been filed within the period allowed for filing the original return, it would have

been a 'first return' within the meaning of § 114(b) (4). But we can find no statutory support for the view that an amendment making the election provided for in that section may be filed as of right after the expiration of the statutory period for filing the original return.

"We are not dealing with an amendment designed merely to correct errors and miscalculations in the original return. Admittedly the Treasury has been liberal in accepting such amended returns even though filed after the period for filing original returns. This, however, is not a case where a taxpayer is merely demanding a correct computation of his tax for a prior year based on facts as they existed. Petitioner is seeking by this amendment not only to change the basis upon which its taxable income was computed for 1934 but to adopt a new method of computation for all subsequent years. That opportunity was afforded as a matter of legislative grace; the election had to be made in the manner and in the time prescribed by Congress. The offer was liberal. But the method of its acceptance was restricted. The offer permitted an election only in an original return or in a timely amendment. An amendment for the purposes of § 114(b) (4) would be timely only if filed within the period provided by the statute for filing the original return. No other time limitation would have statutory sanction. To extend the time beyond the limits prescribed in the Act is a legislative not a judicial function.

"Strong practical considerations support this position.

"If petitioner's view were adopted, taxpayers with the benefit of hindsight could shift from one basis of depletion to another in light of developments subsequent to their original choice. It seems clear that Congress provided that the election must be made once and for all in the first return in order to avoid any such shifts. And to require the administrative branch to extend the time for filing on a showing of cause for delay would be to vest in it discretion which the Congress did not see fit to delegate.

"Petitioner urges that this result will produce a hardship here. It stresses the fact that it had no actual knowledge of the new opportunity afforded it by § 114(b) (4) of the 1934 Act and that equitable considerations should therefore govern. That may be the basis for an appeal to Congress in amelioration of the strictness of that section. But it is no ground for relief by the courts from the rigors of the statutory choice which Congress has provided."

The taxpayer herein makes a desperate effort to distinguish the Riley case from the instant case. The taxpayer asserts that in the Riley case, if an affirmative election to take a percentage depletion was not taken, the Statute prescribed a definite election. There is no such provision in the Statute or Regulations controlling the instant case. In the Riley case, the Statute required an election in the "first return" filed; while, in the instant case, the Regulations require the taxpayer to make an election in the return for the "first taxable year" in which the taxpayer incurs intangible drilling and development costs. In the instant case, the Regulation (Treasury Regulations 86, Art. 23(m)-16(d) prescribes:

"Any taxpayer who has made expenditures for optional drilling and development costs must attach to his return for the first taxable year beginning after December 31, 1933, and for each year thereafter a clear statement of his election under each of the options, together with a statement of the time at which, and the manner in which, such election was made."

These attempted distinctions, we believe, are tenuous, technical and without merit. The Regulation just quoted above, we think, is very clearly directory and no. mandatory. The Regulations set out the proper and practical way in which the election should be made. Certainly it would be a very strained interpretation to hold that merely because a taxpayer fails to file such a "clear statement of his election" in his original return for a specific year, the taxpayer has the right, after filing an original return which treated the drilling costs as capital, to rescind his original election in an untimely amended return. It should be noted that these drilling costs, by the best accounting practice, would normally be treated as capital expenses.

■■ The taxpayer, in its brief, contends that the election must be a deliberate act, a decision arrived at after a full consideration and with adequate knowledge of the law and the facts involved; and that nothing short of this constitutes the prescribed election. We cannot subscribe to such a doctrine; rather, we concur in the

992

second conclusion of law reached by Judge Barksdale [37 F.Supp. 327, 331] : "that the plaintiff, having treated such intangibles drilling and development costs as capital * * * for the first taxable year, is considered to have made an election to charge such expenditures to capital account." We believe that the taxpayer could have changed this election by a timely amended return for the year in question, but not by an untimely return filed at a time which could not have been within any extension that the Collector of Internal Revenue was legally authorized to grant.

A number of authorities are cited in the taxpayer's brief and many other contentions are made. In the light of both what has been said above, and the opinion of Mr. Justice Douglas in the Riley case, we do not think these authorities and these contentions require any further consideration or discussion.

The judgment of the District Court is affirmed.

Affirmed.