ERNEST A. JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF ROBERT O. FARRELL, DECEASED, HARRIS TRUST AND SAVINGS BANK, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9688, 9689.   Promulgated September 10, 1947.

*Milton E. Carter, Esq.*, for the petitioner in Docket No. 9688.
*Clarence F. McCarthy, Esq.*, for the petitioner in Docket No. 9689.
*Harold H. Hart, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: The payments in controversy were dividends if the distributing corporation had earnings and profits sufficient to classify them as such.[1] This depends solely on whether carrying charges on a building pending completion, incurred many years prior to the distribution, were properly charged to capital account, as the corporation actually treated them at the time, or, as petitioners now contend, should have been charged to income, thus creating a surplus deficit which the accumulated earnings are insufficient to overcome.

As a matter of history, the capitalization of these expenses accords with the legislative and administrative interpretation of the law for over twenty years, with an interval of only about a year during which nothing whatever of any relevance to the present controversy occurred. The regulations (65 and 69) issued under the 1924 and 1926 Acts approved such treatment, with the latter regulation, which was in effect in 1927 when the corporate action took place, calling for a different approach only "where the taxpayer has elected to deduct carrying charges in computing net income   *   *   *."[2] In August 1931, bowing to the contrary view expressed in a dictum in *Central Real Estate Co.* v. *Commissioner*,[3] respondent reversed his position, but this was promptly withdrawn when in the Revenue Act of 1932 Congress unequivocally reverted to the original approach.

Even in the 1931 regulations, respondent purported to deal only with cases arising subsequent to August 6, 1931, expressly excepting "the case of carrying charges paid or incurred   *   *   *   prior to

---

[1] Internal Revenue Code, sec. 115 (a), (b).
[2] Regulations 69, art. 1561.
[3] (C. C. A., 5th Cir.), 47 Fed. (2d) 1036.

August 6, 1931, by a taxpayer who did not elect to deduct carrying charges in computing net income   *   *   *."[4]

Not only was the capitalization of such carrying charges authorized by the 1932 Act, but the provision was reenacted without material change in all the subsequent revenue acts and remained in the code beyond the tax year here in question. Respondent's regulations enforcing that provision have continued unchanged through its various reenactments. And it is clear that, even before the unambiguous expression in the 1932 Act, the congressional purpose was to the same effect. H. Rept. 179 (68th Cong., 1st sess.), pp. 12–13; cf. H. Rept. 1492 (72d Cong., 1st sess.), p. 14.

This legislative and administrative interpretation accords with and is justified [5] by the usage and treatment accepted for sound corporate accounting practice. II Kester, Accounting Theory and Practice, 94–95; II Finney, Principles of Accounting, ch. 38, 11–12; Accountants' Handbook (Saliers, Editor), 448, 460, 808; Accountants' Handbook (2d ed.), 522, 1099–1102. Such is the effect of testimony by the corporation's accountant in this very proceeding, and in fact was the occasion for the adoption of the method used in the first instance. It is hence an assignment of some difficulty to suggest that the method of accounting actually employed by the corporation did not truly reflect its income. See *Huntington Securities Corporation* v. *Bucey* (C. C. A., 6th Cir.), 112 Fed. (2d) 368; Regulations 69, art. 23; Revenue Act of 1926, sec. 200 (d).

The practical difficulties of acceding to the petitioners' present suggestion are themselves an argument against it. Throughout the 15 years intervening between the corporate action and the distributions in dispute, corporate books, operating statments, balance sheets, and income tax returns presumably followed the course which petitioners now insist was erroneous. Even if the statement of corporate assets could now belatedly be revised, and the corporation's basis for the property correspondingly changed, the adjustment to the earnings statements would be at least complicated, and perhaps impossible. For example, the corporation deducted depreciation computed on a

---

[4] T. D. 4321, amending Regulations 74, art. 561, X–2 CB 169 (Aug. 6, 1931).

[5] See footnote 7, *infra*. The only authority cited by petitioners (Finney) states:

"Bond interest accruing during the construction period may be capitalized, as well as the proportion of bond discount applicable to the construction period. This allowance is really not a logical one, as the value of the building is not enchanced [sic] by the mere fact that it is paid for with borrowed money. But the practice is permitted in order to spare the corporation the embarrassment of beginning operations with an accumulated deficit."

It is this selfsame purpose of corporate accounting—to eliminate an opening deficit—which petitioners are here attempting to overturn in seeking to establish that this corporation did in fact commence its operations with such a deficit.

Incidentally, the practice is more "logical" than this authority indicates. In other totally unrelated situations capitalization of carrying charges on unproductive property is sometimes actually required. See, e. g., *Kathryn E. T. Horn,* 5 T. C. 597.

basis including the capitalized charges. It seems evident that, if the depreciation deductions were too high, the earnings and profits of the corporation for the whole 15-year period as recorded on the corporate books were too low. The accumulated earnings would accordingly require revision upward to some extent at least, as a consequence of the very act which petitioners now propose as having the opposite effect.

In addition, it is of course apparent that the corporation's income tax liability has been inaccurately stated throughout the same period. Petitioners, as the virtual owners of the corporation, have obtained the indirect benefit of any understatements of corporate income throughout those many years. While we do not to any extent regard this as a ground for disposing of the present proceeding, there is at least no justification for assuming that the equities favor the position which petitioners now urge. The fact is that historically, legally, practically, and from the standpoint of accounting theory, the capitalization of these expenses by the corporation has the more compelling and reasonable support.

There is, however, a narrower ground upon which to rest our conclusion that respondent's determination was correct. As of August 6, 1931, the corporation had already set up on its books the capital items which are presently in dispute. It had not then (nor has it since) made any change in the entry, or made any effort for income tax purposes [6] or otherwise to deal with the items as constituting current deductions. Such treatment, as we have noted, accorded with the then applicable Treasury regulations. When these regulations were changed in 1931, the Commissioner expressly excepted from the force of the altered provisions any treatment which had earlier taken place consistent with the prior interpretation. He thus specifically and explicitly gave a prospective and nonretroactive effect to the change in the regulations. Cf. *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, with *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90. This is a field definitely entrusted to the discretion of the respondent and the Secretary of the Treasury. Revenue Act of 1928, sec. 605; Internal Revenue Code, sec. 3791 (b). And this is so even though the change is required by an overriding court decision. S. Rept. 960 (70th Cong., 1st sess.), p. 40; H. Rept. 1882 (70th Cong., 1st sess.), p. 22. Even were the soundness of the corporation's action less apparent, even were the justification less forceful, the administrative conduct and the corporation's acquiescence therein would thus cause us, at this late date and

[6] As recited in the findings of fact, the corporation has now petitioned this Court with regard to the taxable year ended November 30, 1943, seeking to decrease the cost of the building and to calculate depreciation on such decreased cost, reduced by all depreciation theretofore allowed.

after so many years of consistent action, to avoid characterizing as unauthorized the treatment which both respondent and the corporation viewed as correct at the time and which respondent, with the corporation's tacit approval and the legislative permission we have already noted, excepted from the scope of his subsequently altered view.

It may, of course, be suggested that the regulations which have been discussed deal with basis for depreciation and gain or loss, and not, in terms, with the computation of earnings and profits. See, however, T. D. 5059, 1941–2 C. B. 125, amending Regulations 103. But once we ascertain that the charges were correctly capitalized, the inference must follow that they could not also be income items. *Corinne S. Koshland*, 33 B. T. A. 634. And, while there are situations which present difficult problems of ascertaining whether income tax or corporate accounting concepts should be followed in computing earnings and profits, see *Commissioner* v. *Wheeler*, 324 U. S. 542, this is not such a case. As we have seen, the actual treatment by the corporation, the proper characterization for income tax purposes, and the correct accounting procedure all coincide to require the capitalization of these items as carrying charges on unproductive property, rather than their charge to current expense.

Nor can the application of the provisions in question be resisted on the grounds that the property was not "unimproved," or that it was not "real property." See Revenue Act of 1932, sec. 113 (b) (1) (A); cf. H. Rept. 179 (68th Cong., 1st sess.), *supra*. It is true that the land had buildings on it when it was acquired under the lease, but these were immediately demolished when the lease was made. The consequence is that from the standpoint of the acquiring corporation it was for all practical purposes unimproved at that time. *Providence Journal Co.* v. *Broderick* (C. C. A., 1st Cir.), 104 Fed. (2d) 614; *Lansburgh & Bro., Inc.*, 23 B. T. A. 66. No more does the fact that a building was in course of construction on the leasehold constitute it improved property for purposes of the statute and regulations. The reference to items "properly chargeable to capital account" suggests that the criterion is at least in part a matter of accounting propriety. Both the purpose to be served and accounting authority [7] call for inclusion of "all costs necessary to produce a complete plant in condition ready to earn revenue." The property accordingly seems to us to have been unimproved at all times prior to completion.

The word "real property," as used in statute and regulation, should be taken in its ordinary and nontechnical meaning. See *National*

[7] "A final consideration in the distinction between capital and revenue expenditures has to do with certain costs incurred during the period of original construction. We may cover the situation by a general statement to the effect that all costs necessary to produce a complete plant in condition ready to earn revenue are proper charges against capital." II Kester, *op. cit. supra*, 94.

*Memorial Park, Inc.* v. *Commissioner* (C. C. A., 4th Cir.), 145 Fed. (2d) 1008; certiorari denied, 324 U. S. 858. There would then be little question that a 99-year leasehold on which the tenant constructs a permanent improvement would be viewed as real property. If, however, resort is had to the law of the State of Illinois, where the land is situated, the same result follows. *Imperial Building Co.* v. *Chicago Open Board of Trade*, 238 Ill. 100; 87 N. E. 167. And, although the legislative history is unrevealing, it is hard to believe that the lawmakers would not have had in mind exactly the type of case presented by this proceeding.

The charges in question having been properly capitalized by the distributing corporation and the corporation from the inception of its actual business operations having accumulated sufficient earnings to support a dividend in the amount of the disputed distribution, we find no error in respondent's determination.

Reviewed by the Court.

*Decisions will be entered for the respondent.*