JACKSON v. COMMISSIONER OF INTERNAL REVENUE.

FARRELL v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 9546, 9547.

United States Court of Appeals Seventh Circuit.

Feb. 17, 1949.

Rehearing Denied March 16, 1949.

Carroll J. Lord, Leland K. Neeves, and Jess Halsted, all of Chicago, Ill., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., Hilbert P. Zarky, U. S. Department of Justice, of Washington, D. C., and Ellis N. Slack and Helen Goodner, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Petitioners, principal stockholders in an Illinois corporation and the recipients in 1941 of a distribution by the corporation of a total of $250,000 which the Tax Court held was taxable dividends, seek by their petitions for review to reverse the decisions of the Tax Court.

The Tax Court made findings of fact which for the most part had been stipulated. Stated concisely these facts are that the corporation, the Wabash Monroe Building Corporation (hereinafter referred to as the corporation), was organized in 1925 for the purpose of erecting and operating a building at the corner of Wabash and Monroe Streets, Chicago, Illinois. It has engaged in no other business. To effectuate its purpose it acquired a 99-year lease covering the premises. It demolished the buildings standing on the premises and thereafter constructed a steel frame building which was completed about June 30, 1927. During the construction period of 1926 and 1927 the corporation received no income except interest on funds held to defray the cost of construction. During this period it paid certain amounts, which we shall enumerate generally as (1) rent and interest, (2) interest on bonds, (3) State and federal taxes, and (4) fees for financial services performed, all of which were charged on its books to building costs. These charges totaled $383,805.55. From the testimony of the corporation's accountant the court found that all expenditures during the period of construction were proper items to be capitalized, and that capitalization of these items was in accord with well-established accounting principles. The corporation carried the building on its books at a cost of $2,491,-187.56, subsequently reduced to $2,486,774.-80, which included the amount of the aforesaid carrying charges. Depreciation on the building costs before and after the adjustment was claimed by and allowed to the corporation from 1927 to November 30, 1941.

On November 30, 1941, pursuant to a declaration by the corporation's directors that a distribution to the stockholders in the amount of $250,000 be made, a cash distribution in that amount was made and charged to capital surplus. Jackson received $112,500. Farrell received $125,-000, and Lord received $12,500.

The Tax Court affirmed the Commissioner's determination that in 1941 the corporation had accumulated earnings and profits in excess of the distribution and that the distribution was taxable income under §§ 22(a) and 115(a) of the Internal Revenue Code, 26 U.S.C.A. §§ 22(a), 115(a).

Under § 22(a) of the Code dividends are included within the definition of gross income. A dividend within the meaning of the Code is defined in § 115(a) as "any distribution made by a corporation to its shareholders * * * out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * *" The parties stipulated that for the taxable year January 1 to November 30, 1941, the corporation sustained an operating net loss of $8,592.39. In view of the foregoing, it is clear that the corporation's distribution of $250,000 is a dividend and taxable under § 115(a) if the corporation had sufficient earnings accumulated after 1913 to cover it. The parties further stipulated that on January 1, 1941, the corporation had accumulated earnings of $301,090.15 if the items totaling $383,805.55 here in question were properly charged in 1927 to building costs. The corporation charged this distribution in 1941 to capital surplus and not to earned surplus. The impropriety of this entry is made patent from a reading of § 115(b) of the Code which fixes the source of distribution for tax purposes as that which "is made out of earnings or profits to the extent thereof * * *" In other words, if a corporation has available sufficient earnings and profits, any distribution to stockholders, for tax purposes, must be assumed to have been made from the earnings or profits. Lawrence v. Commissioner, 9 Cir., 143 F.2d 456, 459; Beretta v. Commissioner, 5 Cir., 141 F.2d 452, 455; Rheinstrom v. Conner, 6 Cir., 125 F. 2d 790, 794.

The sole question here is whether the items of rent, interest, taxes and financing services, were properly charged by the corporation in 1926 and 1927 to building costs. If they were, the corporate distribution in 1941 was a taxable dividend. If they were not, they were mere expenses which should have been deducted from gross income in the determination of taxable net income.

To reverse, petitioners are faced with the herculean task of overcoming respondent's regulations applicable at that time and the corporation's method of accounting which it consistently followed for some fifteen years prior to 1941.

They argue that by the authority of Central Real Estate v. Commissioner, 5 Cir., 47 F.2d 1036, carrying charges could not be capitalized under any of the Revenue Acts prior to 1932, and that respondent's regulations issued under the Acts prior to 1932 purporting to authorize such capitalization were invalid. In the Central Real Estate case the petitioner in 1913 had purchased unimproved real estate. The realty remained unproductive until 1918. In the intervening years petitioner had paid interest on the unpaid portions of the purchase price as well as the current taxes. These amounts were capitalized on the books and added to the original cost of the property. In 1924 the petitioner filed amended returns for the years 1913 to 1917 and claimed such interest and taxes as deductions. The deductions were allowed by the Commissioner. The same year the property was sold at a profit. In filing its returns for 1925, the petitioner sought to add the interest and tax items as part of the cost of the property. The Commissioner disallowed this claim on the ground that the petitioner had had the benefit of the deductions. The Board of Tax Appeals and the Court of Appeals for the Fifth Circuit affirmed the Commissioner but not upon his interpretation of the law. (The respondent in the instant case while agreeing with the conclusion reached in the Central Real Estate case disagrees with the reasoning involved.) In its decision the court considered Treasury Regulation 69 which provided, among other things, that if the taxpayer has so elected, "carrying charges, such as taxes on unproductive property, are to be added to the cost of the property," but it rejected the regulation as the correct interpretation of § 202 of the Revenue Act of 1926, 26 U.S. C.A. Int.Rev.Acts, page 147; because it held the language of § 202 "unambiguous and, therefore, the sole evidence of its own meaning. The court stated that the provision of § 202(b), that an adjustment might be made for any expenditure or item of loss properly chargeable to capital account, did not mean the items such as taxes and interest. It concluded that what Congress did not provide, it could not have intended to provide.

The ultimate determination of our question turns upon whether the 1926 regulation was valid. Petitioners argue that the court in the Central Real Estate case "held flatly that the Revenue Acts in question did not authorize the capitalization of carrying charges, and that therefore Respondent's Regulations which purported to authorize such capitalization were invalid." In the light of our foregoing discussion, we cannot agree that the court did not hold the regulations invalid. If it did not declare the 1926 regulation invalid, it certainly sought to enervate it. But in the Revenue Acts of 1926 and 1928 the applicable sections were reenacted without material change which would indicate the regulation of 1926 was not outside the scope of Congressional intention. The rule in this regard is that Treasury regulations long continued without substantial change and applying to substantially reenacted statutes are deemed to have received Congressional approval. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52. But even stronger evidence of Congressional approval of Regulation 69 emanates from the fact that in the Revenue Act of 1932, § 113(b), 26 U.S.C.A. Int.Rev.Acts, page 518, Congress incorporated the 1926 regulation with no material difference into the statute itself. In this statute provision was made for proper adjustment on items properly chargeable to capital account "including taxes * * * on unimproved and unproductive real property." It is true that while the Central Real Estate decision was rendered prior to the Act of 1932 it is apparent that its conclusion in regard to Regulation 69 was a misinterpretation of Congressional intention. This same statutory provision was retained in the subsequent Acts until 1942.

The petitioners without citations further argue that the provisions of the Act of 1932 do not apply. Except for showing the Congressional intention, we agree.

The petitioners also contend that the charges in question are not actually carrying charges within the meaning of capital expenditures. Under the facts in this case it will be sufficient to say that all the charges involved were incurred while the property was unproductive and undoubtedly were assumed for the purpose of converting it into the productive state for which it was acquired. In this regard our attention has been directed to Tressler Coal Mining Co. v. Commissioner, 11 T.C. ——. Because this case cited with approval the Central Real Estate case that but for the provisions in § 113(b) a taxpayer would have no right to capitalize interest, the petitioners strongly urge that the authority of Central Real Estate remain unimpaired. In the Tressler case the taxpayer purchased mining property and, upon taking possession, discovered that certain equipment supposed to have been covered by the purchase price had been removed. Suit was brought for abatement of the unpaid balance of the purchase price. Judgment was for abatement for a part of the balance plus interest. While the Tax Court held that the legal and court expenses were proper capital expenditures, the interest adjudicated by the judgment as due on the unpaid purchase price was a mere expense item since the property was not shown to have been unimproved and unproductive property. In view of the complete dissimilarity of the facts regarding unproductive property between the Tressler and the instant case, we feel that nothing should be added on this point. In regard to the Tressler case substantiating the authority of the Central Real Estate case it will be sufficient to say, as the Commissioner has pointed out, that there was no error in the Central Real Estate decision which held that there can be no adjustment in basis except as Congress has authorized it, and the point for which it was cited in the Tressler case. We believe the 1926 regulation was valid.

Much is made by petitioners of the inconsistent positions assumed by respondent in this and briefs prepared by him in prior cases. We believe respondent's position in the instant case to be well-bottomed in the law and, therefore, have no concern with alleged errors which he may have alleged to other courts.

The decision of the Tax Court is affirmed.