ESTATE OF RICHARD R. WILBUR, DOROTHY P. WILBUR AND UNITED CALIFORNIA BANK, COEXECUTORS, AND DOROTHY P. WILBUR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1086-63.    Filed December 16, 1964.

---

[5] This additional tax has been repealed for taxable years beginning after Dec. 31, 1963, by Pub. L. 88-272, sec. 234(a).

*Hart H. Spiegel*, for the petitioners.
*David R. Brennen*, for the respondent.

### OPINION

RAUM, *Judge:* The Commissioner determined income tax deficiencies and additions thereto in the aggregate amount of $262,552.07 for the years 1954, 1955, 1956, 1959, and 1960. The parties have reached agreement as to all issues except those involving certain farming expenses referred to as "cultural practices expenditures." These remaining issues affect only the deficiencies for the years 1956, 1959, and 1960, but the year 1958 appears to be involved also by reason of a possible carryover. The facts have been stipulated.

Richard R. Wilbur resided with his wife Dorothy during the tax years in Yuba City, Calif. She is involved herein only because they filed joint returns. He died in December 1961 and will sometimes hereinafter be referred to as the taxpayer. He was engaged in farming on a large scale in the Sacramento Valley, particularly in the production of peaches, prunes, almonds, and English walnuts, all of which are grown on trees.

A tree will not bear a crop of commercial value for at least several years after planting; thus, a peach tree will not produce a paying crop until the fourth year of its life, a prune tree until the sixth year, and an English walnut tree until the eighth year. After the initial capital expenses are incurred in planting the orchards, it is necessary to make large expenditures from time to time thereafter for irrigation, cultivation, pruning, fertilizing, spraying, and other care of the trees which have not yet reached the productive state. Such expenditures are referred to as cultural practices expenditures. They are apparently similar in character to maintenance expenses for like purposes after full production has been attained, and the parties have stipu-

lated that "They were ordinarily paid in his [taxpayer's] farming business, and they were necessarily so paid."

The Treasury has long recognized that although cultural practices expenditures are of the type that may normally be deducted as ordinary and necessary expenses, they also bear a similarity to capital outlays, and it has given farmers an option to treat them either way. This option is presently contained in Income Tax Regulations section 1.162–12 which provides: "Amounts expended in the development of farms, orchards, and ranches prior to the time when the productive state is reached may be regarded as investments of capital." Identical provisions in prior regulations have been in effect for some 45 years,[1] and a ruling issued as far back as 1923 has explicitly interpreted the regulations as meaning that "the taxpayer has the option of charging such amounts as expense or capitalizing them." I.T. 1610, II–1 C.B. 85.[2]

The dispute between the parties herein is whether certain cultural practices expenditures in the years 1956, 1958, 1959, and 1960 must be capitalized, in view of the manner in which such expenditures or portions thereof were treated on the returns for those years. We turn to the facts out of which the issues arise.

In each of the years 1953, 1954, and 1955, the taxpayer made substantial cultural practices expenditures, which he deducted in full as business expenses on his returns and which were allowed by the Commissioner. In 1956 the taxpayer made substantial cultural practices expenditures in respect of orchards planted in prior years as well as cultural practices expenditures in the amount of $19,575 in respect of orchards planted in 1956; he deducted as business expenses the amounts relating to the previously planted orchards, but included the $19,575 in the cost of planting the new orchards in 1956 which he capitalized.[3] The Commissioner made no adjustment in the taxpayer's treatment of any of the cultural practices expenditures made in 1956. The taxpayer made substantial cultural practices expenditures in 1957 which he deducted in full as business expenses; the Commissioner did not disturb these deductions.

---

[1] See art. 110, Regs. 45 (1918 Act) ; art. 110, Regs. 62 (1921 Act) ; art. 111, Regs. 65 (1924 Act) ; art. 111, Regs. 69 (1926 Act) ; art. 131, Regs. 74 (1928 Act) ; art. 131, Regs. 77 (1932 Act) ; art. 23(a)–11, Regs. 86 (1934 Act) ; art. 23(a)–11, Regs. 94 (1936 Act) ; art. 23(a)–11, Regs. 101 (1938 Act) ; sec. 19.23(a)–11, Regs. 103 (1939 Code, 1940 ed.) ; sec. 29.23(a)–11, Regs. 111 (1939 Code, 1943 ed.) ; sec. 39.23(a)–11, Regs. 118 (1939 Code, 1953 ed.).

Prior to the foregoing regulations, the Treasury had ruled in art. 4, Regs. 33 (rev.), promulgated under the Act of Sept. 8, 1916, as amended by the Act of Oct. 3, 1917, that "Amounts expended in the development of orchards and ranches prior to the time when the productive stage is reached constitute investments of capital."

[2] However, a later ruling has made clear that the regulations were not intended to permit the deduction of expenditures that were clearly capital in nature, such as planting expenses, etc. Mim. 6030, 1946–2 C.B. 45; Mim. 6030 (Supp. 1), 1948–1 C.B. 42; *Thompson & Folger Co.*, 17 T.C. 722.

[3] Petitioner capitalized a total of $57,750, of which $38,175 represented the cost of planting the new orchards in 1956 and the remaining $19,575 represented the 1956 cultural practices expenditures in respect of those orchards. The parties have since agreed that the correct planting costs were $36,956.72.

In the preparation of the 1958, 1959, and 1960 returns, the taxpayer and his accountants computed his cultural practices expenditures as $38,881.74, $66,003, and $64,300.50, respectively. When these returns were prepared, the accountants explained that no taxable income would appear thereon and, acting upon their advice, the taxpayer determined to capitalize these amounts so that he could recover them in subsequent years through depreciation. Accordingly, these amounts were in fact included among the capital expenditures reflected on the returns for each of the years, and depreciation deductions have been taken in respect thereof in subsequent years—all in accordance with the taxpayer's books. The taxpayer and his accountants thought that they were capitalizing expenditures to the maximum extent permitted by law in the 1958–60 returns. However, through oversight, they miscalculated the amounts of cultural practices expenditures during each of those years, which in fact were $81,653.50, $95,002.40, and $73,157.50, respectively.[4] The differences of $42,771.76, $28,999.40, and $8,857 were included among the deductions for business expenses in the 1958, 1959, and 1960 returns, respectively.

In supporting the deficiencies determined for 1959 and 1960 the Commissioner takes the position that these additional amounts which had been deducted in the 1958–60 returns must be capitalized along with the amounts of cultural practices expenditures actually reflected as capital items on those returns. Petitioners, on the other hand, contend that the taxpayer had a right to deduct cultural practices expenditures and that to the extent that such deductions were actually taken on the returns they may not be disturbed. In addition, petitioners make the sweeping contention that all cultural practices expenditures are by their nature deductible business expenses and that the regulations giving taxpayers the option to treat such expenditures as capital outlays or deductions are invalid. Finally, they contend that even if the regulations are valid the taxpayer was entitled to deduct the cultural practices expenditures capitalized in the returns. In connection with that final contention they filed amended returns for 1958–60 on January 2, 1963, and an amended return for 1956 on March 12, 1963, claiming *all* cultural practices expenditures as deductions for such years, even those capitalized in the original returns. As to the deficiencies for 1959 and 1960, petitioners point to the fact that other adjustments required by the Commissioner result in taxable income for these years,[5] and they argue that since the taxpayer thought he

[4] The error occurred in the following manner: The taxpayer and his accountants determined the amount of cultural practices expenditures by reference to depreciation schedules maintained by them, and, through oversight, additional acreage on orchards upon which cultural practices expenditures had been made were not included in those schedules.

[5] In respect of 1960 there will be taxable income after giving effect to the Commissioner's adjustments if all the cultural practices expenditures are not deductible; in respect of 1959, however, there is in fact taxable income after giving effect to the adjustments irrespective of the deductibility of such expenditures.

The stipulation of the parties does not disclose any comparable situation in respect of 1958.

did not have any taxable income at the time he filed his original returns, he did not have a meaningful choice when he elected to capitalize cultural practices expenditures, with the consequence that he should not be bound by that election. As to 1956, they argue that the $19,575 cultural practices expenditures were mistakenly capitalized and should now be treated as business deductions.

We hold, first, that the Commissioner may not require the capitalization of those amounts actually deducted in the taxpayer's original returns for 1958–60; second, that the applicable regulations permitting the capitalization of cultural practices expenditures are valid; and, third, that the taxpayer was bound by the election to capitalize the amounts actually reflected as capitalized in the 1958–60 returns, as well as the amount capitalized in the 1956 return.

1. In the 1958–60 returns, cultural practices expenditures in the respective amounts of $42,771.76, $28,999.40, and $8,857 were in fact included among the deductions taken. The Commissioner does not dispute that such deductions were authorized under section 162(a) of the 1954 Code, which provides for a deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." However, he does contend that the taxpayer elected to capitalize *all* cultural practices expenditures in the years 1958–60, that the adjustments giving rise to the 1959 and 1960 deficiencies in this respect simply correct the error made by the taxpayer in determining all of the cultural practices expenditures, and that such adjustments merely give full effect to the election made by the taxpayer.

We think that the Commissioner's position is based upon a misconception of the record. It is true that the taxpayer and his accountants believed that they were capitalizing expenditures to the full extent permitted by law when they capitalized cultural practices expenditures in the amounts of $38,881.74, $66,003, and $64,300.50 in the 1958–60 returns, respectively. And it is true that, through oversight, like expenditures relating to some orchards were overlooked in this respect, and that such latter expenditures, in the amounts of $42,771.76, $28,999.40, and $8,857 were in fact deducted rather than capitalized. But this is a far cry from concluding that the taxpayer elected to capitalize these latter amounts. He in fact elected to capitalize only those expenditures which were capitalized on the returns, thinking that they consisted of all the cultural practices expenditures in those years. Whether he would have capitalized the additional cultural practices expenditures, had he known about them, is nowhere established in the record. Quite possibly he would have elected to capitalize these amounts had he realized that they represented cultural practices expenditures. But the fact is that he did not so elect, whether by error or otherwise, and he in fact took deductions to which he was entitled under the statute.

The Commissioner makes clear in his brief that he "does not contend that an election to capitalize a portion of the cultural practices expenditures paid in a year requires the capitalization of all such expenditures." Thus, the farmer is not required to treat all cultural practices expenditures the same way; he may capitalize some and deduct others. And the Commissioner therefore does not contend that the taxpayer must capitalize all cultural practices expenditures merely because he has capitalized some. Rather, he argues that the taxpayer has actually elected to capitalize all such expenditures. We do not so read the record. The taxpayer was in error when he thought he was capitalizing all such expenditures, but he in fact deducted large amounts in excess of those that he capitalized. He might or might not have elected to deduct all had he known what the correct amounts were. But the fact is that the deductions in his 1958–60 returns included cultural practices expenditures in the amounts of $42,771.76, $28,999.40, and $8,857. He was entitled to those deductions under section 162(a) and petitioners may not now be deprived of the benefit of them on the theory that he had elected to capitalize these expenditures on his returns. He did no such thing.

2. In arguing that the taxpayer was entitled to deduct not only the cultural practices expenditures actually deducted on the returns—a position that we have just approved—but also those capitalized on the returns, petitioners make the broad contention that the regulations authorizing the capitalization of such expenditures are inconsistent with the statute and are therefore invalid. They take the position that cultural practices expenditures are by their very nature business expenses rather than capital outlays, and that as such they can only be taken as deductions. We think that their argument rests upon an oversimplified analysis of the situation.

To be sure, once an orchard has come into production, expenditures for irrigation, pruning, fertilizing, etc., are ordinary and necessary business expenses; they are a charge against current income and must be taken as deductions. But the situation is far less clear prior to the time that an orchard has reached the productive state. The expenditures prior to that time may be considered in every real sense as part of and directly related to the cost of acquiring a producing orchard, and as such have the characteristics of capital outlays.[6] Cf. *Ernest A. Jackson*, 9 T.C. 307, affirmed 172 F. 2d 605 (C.A. 7), certiorari denied 338 U.S. 816. *Central Real Estate Co.*, 17 B.T.A. 776, affirmed 47 F. 2d 1036 (C.A. 5), and related cases upon which peti-

---

[6] An analogy may be found in the cost of painting a building which generally is considered a deductible business expense. Yet, the cost of putting the final coat of paint on a building in the course of construction is plainly a capital expenditure. Both involve painting and may be identical in physical character; however, one is incurred in ordinary maintenance while the other is one of the components of cost in acquiring a complete capital asset.

tioners particularly rely must be read in the light of the later decision in *Jackson*.[7] It is thus apparent that expenditures which upon superficial analysis may appear to be merely business expenses actually have strong characteristics of both capital outlays and business expenditures. It is not a choice between black or white. Rather, these expenditures fall in a band of gray between black and white, and we think that the regulations giving the farmer an election to treat such expenditures either way was well within the authority of the Secretary of the Treasury under the statute.

As noted above (p. 324), identical regulations have been in effect for some 45 years. The rule has firmly been established that Treasury regulations are valid unless unreasonable or plainly inconsistent with the statute and that they should not be set aside except for weighty reasons. *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501; *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378; *Boske* v. *Comingore*, 177 U.S. 459, 470; *Brewster* v. *Gage*, 280 U.S. 327, 336; *Textile Mills Corp.* v. *Commissioner*, 314 U.S. 326, 336–339; *Colgate Co.* v. *United States*, 320 U.S. 422, 426. This rule is particularly applicable here in view of the long continued period during which such regulations have been in effect and during which the statute has so often been reenacted and amended without disapproval of the regulations. Cf. *Buttolph* v. *Commissioner*, 29 F. 2d 695, 696 (C.A. 7); *Helvering* v. *Winmill*, 305 U.S. 79, 83; *Taft* v. *Commissioner*, 304 U.S. 351, 357; *McFeely* v. *Commissioner*, 296 U.S. 102, 108; *Hartley* v. *Commissioner*, 295 U.S. 216, 220; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U.S. 289, 293–294; *Helvering* v. *Bliss*, 293 U.S. 144, 151; *Brewster* v. *Gage*, 280 U.S. 327, 337. These regulations were adopted for the the benefit of the farmer, and we should be very slow indeed to wipe them out at the behest of one taxpayer whose strategic litigation interests in this particular case would be served by such action to the disadvantage of all other farmers. We do not find in these regulations that inconsistency with the statute that calls for their invalidation.

Petitioners refer to the fact that the parties have stipulated that the expenditures here were "ordinarily paid in his [taxpayer's] farming business, and they were necessarily so paid." This stipulation, of course, does not mean that the parties agreed that these expenditures must be treated as business expenses; if it did there would be no point to this lawsuit and that would be the end of the controversy. We think that it means simply that to the extent that the expenditures

---

[7] Moreover, the expenditures involved herein relate directly to the physical orchards that are being brought to a productive state and are thus more closely associated with capital expenditures than are the interest, real estate taxes, and other carrying charges considered in *Central Real Estate Co.* which in general are predominantly expense items. The present case in this respect is thus even stronger than *Jackson* which supports the result that we reach herein.

are to be treated as business expenses the "ordinary and necessary" requirement of the statute is satisfied. The question whether they must be treated as business expenses rather than capital outlays is left open. On that matter, the regulations give the farmer an option, and we refuse to hold that such regulations are unauthorized by law.

3. Petitioners contend that even if the regulations are valid, the taxpayer nevertheless was not bound by his election to capitalize cultural practices expenditures in the returns for 1956 and 1958–60.

(a) As to 1956, petitioners argue that although cultural practices expenditures in the amount of $19,575 were in fact included by the taxpayer in the total amount capitalized on the return for that year, he did not intend to do so, that such capitalization was a mistake and should in substance be ignored. We do not agree. Nothing before us establishes any such alleged mistake, and petitioners' position is based at best upon conjectural inferences that they seek to draw from the materials in the record. Moreover, the stipulation of facts reveals that as late as January 1, 1961, petitioners' general ledger shows these 1956 expenditures as a capital item subject to depreciation. In the circumstances we do not find that the $19,575 expenditures were capitalized by mistake. In any event, see *Boone County Coal Corporation* v. *United States,* 121 F. 2d 988, 991–992 (C.A. 4).

(b) As to 1958–60, and also as to 1956, petitioners contend that the election to capitalize the cultural practices expenditures was revocable and that they are not bound by such election in the circumstances of this case. We hold otherwise.

As long ago as 1924, a ruling was issued which bears directly upon this issue. I.T. 1952, III–1 C.B. 139. That ruling dealt with a taxpayer who in the years 1918–20 had capitalized the expense of bringing his ranch property to a productive state pursuant to the option in the regulations and who thereafter wished "to file amended returns for [those] years, * * * claiming the expense as a deduction." It was held:

that inasmuch as the taxpayer exercised his option for the years 1918, 1919, and 1920 by capitalizing the expenditures of bringing his ranch property to a productive state instead of deducting the amounts as business expenses, he is not now entitled to file claims for refund based on the fact that he now desires to treat the amounts as business expenses for those years.

Petitioners' attempt to distinguish this ruling on the ground that it dealt with claims for refund is not persuasive. Although it did mention claims for refund, we think that such reference was not intended to limit the scope of the ruling. The heart of the ruling was that the taxpayer once having made an election was thereafter precluded from changing it; and the reference to claims for refund (as well as amended returns) merely identified the means that a taxpayer might normally employ in his attempt to change the election. The fact, as

shown in the stipulation, that petitioners sought to induce the revenue agent to allow these expenditures as deductions during the course of the audit if he made other adjustments is not in our opinion enough to render the ruling inapposite. We think that it is applicable and controlling.

Nor do we accept as accurate the underlying basis for petitioners' contention that since the original returns showed no taxable income the taxpayer really did not have any meaningful election when he chose to capitalize the disputed amounts rather than to take them as deductions. Even assuming that the point is otherwise valid, the underlying premise for this argument is not true. The taxpayer did indeed have a meaningful choice. Even if the returns disclosed no taxable income, the taxpayer had a very real choice. If he capitalized the expenditures he would have the benefit thereof in later years in the form of depreciation deductions spread over the life of the orchard. On the other hand, if he deducted the amounts in question they would add to his net operating loss and he could look forward to benefiting therefrom in following years in the form of carryovers. Thus, the taxpayer was not offered a blind choice. True, the third possibility of deducting these amounts from current taxable income was not a realistic one, but the other two alternatives remained, and the taxpayer did in fact have a meaningful choice as to whether to take the expenditures as deductions or to capitalize them.

Neither party has directed our attention to any decisions squarely in point, but the dominant thrust of most of the cases that were referred to and discussed appears to be in accord with our conclusion.

In *Pacific National Co.* v. *Welch*, 304 U.S. 191, affirming 91 F. 2d 590 (C.A. 9), the taxpayer had the option, under applicable statutes and regulations, to have gain from sales of its property computed either by the "deferred payment method" or by the "installment method." It reported its income using one method and subsequently sought a refund based on a computation under the other method. Although recognizing that the taxpayer could have used either method originally, the Supreme Court held that once the election was made it was binding. In commenting upon one of the factors that led it to that conclusion the Court said (p. 194) : "Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws." Like considerations are applicable here. Although the returns were being audited when petitioners first requested the revenue agent to change the election, the matter was not as simple as petitioners now intimate. For not only would such change affect the computation for the particular year in which a deduction was sought, but as a result of the option to capitalize, the taxpayer had been taking depreciation

deductions on the capitalized amounts in all subsequent years. Accordingly, a change in the method of treating the cultural practices expenditures would require not only appropriate adjustments in depreciation deductions for those subsequent years then being audited by the revenue agent, but also careful and continued inspection of the returns for any years beyond those that were then the subject of audit to make sure that they would be consistent with any change in the election. We think that this would impose just the kind of "burdensome uncertainties upon the administration of the revenue laws" that were referred to in *Pacific National Co.* v. *Welch*.

Other cases which, in a variety of situations, reflect a similar result are: *United States* v. *Kaplan*, 304 U.S. 195; *Buttolph* v. *Commissioner*, 29 F. 2d 695 (C.A. 7) (attempt to change from joint returns to separate returns); *Kehoe-Berge Coal Co.* v. *Commissioner*, 117 F. 2d 439, 440 (C.A. 3); *Boone County Coal Corporation* v. *United States*, 121 F. 2d 988 (C.A. 4); *Keeler* v. *Commissioner*, 180 F. 2d 707, 710 (C.A. 10); *Jacobs* v. *Commissioner*, 224 F. 2d 412, 414 (C.A. 9); *Thorrez* v. *Commissioner*, 272 F. 2d 945 (C.A. 6), affirming 31 T.C. 655, 667–670; *Burke & Herbert Bank & Trust Co.*, 10 T.C. 1007; *Schall & Co.* v. *United States*, 129 F. Supp. 137 (S.D. N.Y.); *Estate of E. P. Lamberth*, 31 T.C. 302.

Petitioners have relied on certain cases such as *Gentsch* v. *Goodyear Tire & Rubber Co.*, 151 F. 2d 997 (C.A. 6); *Richardson* v. *Commissioner*, 126 F. 2d 562 (C.A. 2); and *Meyer's Estate* v. *Commissioner*, 200 F. 2d 592 (C.A. 5). These appear to push in the opposite direction, but, like the decisions relied upon by the Government, none of them is squarely in point. However, to the extent that we can discern a dominant pattern among them, we think that the line of cases headed by *Pacific National Co.* v. *Welch* more nearly furnishes the correct guidance for the disposition of the present controversy. We hold that petitioners may not disavow the election made on the taxpayer's original returns for 1956, 1958, 1959, and 1960 to capitalize the cultural practices expenditures that were in fact capitalized on those returns.

*Decision will be entered under Rule 50.*