**Gregg RANSBURG and Marjorie D. Ransburg, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. IP 66–C–455.**

United States District Court
S. D. Indiana,
Indianapolis Division.

Sept. 21, 1967.

Alan H. Lobley, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for plaintiffs.

K. Edwin Applegate, U. S. Dist. Atty., Indianapolis, Ind., John S. Stephan, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM ENTRY

HOLDER, District Judge.

The action was commenced under the provisions of Title 28 U.S.C.A. Section 1346(a) (1) with the filing of plaintiffs' complaint on October 3, 1966 for the refund of income taxes paid for the calendar years 1960, 1961, 1962 and 1963 totaling $24,906.11 plus interest from respective dates of payment. The taxpayers owned and operated a Christmas tree farm and in their income tax returns elected to proceed under the capital gains tax treatment authorized by Title

26 U.S.C.A. Section 631 upon the sales of Christmas trees (seven to ten years of growth) in each of the years in question. During the years in question, the taxpayers made expenditures for pruning and shearing of the trees which expense they seek to deduct as ordinary and necessary business expenses under Title 26 U.S.C.A. Section 162. The government contends the expenses are capital expenditures.

The Christmas tree farm in Brown County, Indiana, was operated individually by Gregg Ransburg in the tax year 1960 and the plaintiffs, as partners, operated the farm in the tax years 1961, 1962 and 1963. The plaintiffs were husband and wife at all times in issue.

The trees (mostly Scotch Pine) were planted, cultivated, harvested and then sold to dealers in seven to ten years after planting. The planting operation consisted of machine planting (very few hand plantings) of usually two year old seedlings on cleared land. In the first and subsequent growing years a necessary program of weed and brush control was practiced to reduce non-crop vegetation in aid of the developing seedling and growing trees otherwise the seedlings and trees suffer mortality and survivors suffer damage which affects the marketable appearance. Commencing with the third year of growth a necessary program of annually shearing or pruning of the growing trees was followed. In June and July of each year the terminal leader (the top part of the verticle stem containing a bud representing its new growth for that year) is removed to prevent the growth of new branches from the bud during the next growing season and to induce the development of buds and branches therefrom on the uncut portion of the terminal leader. The result of the shearing is the branches develop closer to each other and the tree is denser with a better shape and appearance but it requires more years to reach a marketable growth than an unsheared tree. In addition side branches of the trees were annually sheared to shape the tree. In years

when predatory insects are present, the plaintiffs sprayed their trees with chemicals to prevent damage to the trees by such insects.

Approximately ninety per cent (90%) of the seedlings survive the transplanting and only fifty per cent (50%) mature into marketable and harvested trees with plaintiffs' program of planting, cultivating and harvesting. There is no substantial market for plaintiffs' trees unless plaintiffs' program is practiced. Scotch Pine cannot be grown in Indiana for any economic purpose other than the Christmas tree market.

During the years in question, the plaintiffs incurred the following expenses in shearing the trees:

| Year | Expense of Shearing |
|------|---------------------|
| 1960 | $ 5,564.34 |
| 1961 | 8,808.65 |
| 1962 | 17,368.60 |
| 1963 | 17,055.00 |

Plaintiffs elected to proceed with the capital gains tax treatment of the trees sold in the tax years in question. They did not deduct the shearing expenses in their income tax returns for the years 1960 and 1961 but they duly filed claims for a refund of taxes paid in the amount of $3,847.13 plus interest for 1960 and $6,077.97 plus interest for the year 1961 based on such omission to deduct such shearing expenses as ordinary and necessary business expenses. No final action was taken on these claims and plaintiffs have not waived notice of disallowance. In their 1962 and 1963 income tax returns the shearing expenses were so deducted.

On December 10, 1965, the plaintiffs paid the sum of $6,450.49 as additional taxes for the year 1962 and $8,530.52 as additional taxes for the year 1963 by reason of the defendant disallowing the shearing expenses as an ordinary and necessary business expense as it had been treated by plaintiffs in their timely filed joint returns for such years. The defendant required that such expenses being treated as capital expenditures and

this resulted in the additional tax payments. On February 11, 1966, the plaintiffs duly filed their claim for refund of such additional tax payments. Prior to this action, the plaintiffs waived notice of the denial of their claims for refund of taxes for the tax years 1960, 1962 and 1963.

The plaintiffs deducted the weed, brush and insect control expenses as ordinary and necessary business expenditures in their tax returns and the defendant has not questioned these deductions.

The Internal Revenue Code does not expressly conclude the question of whether the taxpayers' shearing expenses (which are labor costs) are an ordinary and necessary cost of doing business under Title 26 U.S.C.A. Section 162, or whether they are a capital expenditure under Title 26 U.S.C.A. Section 263.

Prior to the year 1944, a taxpayer engaged in the business of raising and selling timber was required to report the proceeds of timber sales as ordinary income and was entitled to deduct all ordinary and necessary expense attributable to such sales under Title 26 U.S.C.A. Section 23(a) (1939 Internal Revenue Code). The Revenue Act of 1943 (58 Stat. 46) amended the 1939 Internal Revenue Code by adding Sections 117(k) (1) and (2). Title 26 U.S.C.A. Section 117(k) (1) and (2) (1939 Internal Revenue Code). Thereafter, such taxpayer could elect to proceed as he did before the amendment with respect to reporting sales as ordinary income, or to utilize the amendment by reporting the sales as capital gains. The amendment was made to relieve timber owners and there was no express prohibition of the deduction by a taxpayer from income of his ordinary and necessary expenses incurred in growing or selling of his timber, or express provision which would require him to offset such expenses against capital gains realized on timber sales.

The 1954 Internal Revenue Code adopted the 1943 Amendment of the 1939 Internal Revenue Code and added the following sentence to Subsection (a) of Section 631, Title 26 U.S.C.A. (1954 Internal Revenue Code):

"For purposes of this subsection and subsection (b), the term 'timber' includes evergreen trees which are more than 6 years old at the time severed from the roots and are sold for ornamental purposes."

Thereafter, a taxpayer engaged in the business of growing and selling Christmas trees for ornamental purposes, like the timber grower, could elect to report his sales as capital gains. Congress recognized that an ornamental tree grower, like the timber grower, incurred operating expenses during the long period of years to grow Christmas trees to maturity and was entitled to tax relief from the effect of requiring the reporting of the proceeds of the sale of the trees as ordinary income in the year of the sale.

The taxpayers contend that the shearing is the annual pruning of the growing trees after the first few years of growth in order to maintain the proper growth characteristics of the trees and in this respect is like fertilizing and other silvicultural practices. Thus, the taxpayers claim such practices could in no way be construed under Title 26 U.S.C.A. Section 263 to be permanent improvements made to increase the value of the property as classified by the Internal Revenue Service in Revenue Ruling 66–18. Whereas the government contends that the trees are graded and tagged according to quality, before harvesting; the better the shape of the tree, the higher the price it will bring; and pruning controls and improves the tree shape, increases the quality, and enables the taxpayer to obtain a higher price for the trees. The Indiana tree crop of the taxpayers would be a failure economically but for the pruning as already determined. The pruning is not a practice indulged in for permanent improvements or betterment to increase the value of the trees within the meaning of Title 26 U.S.C.A. Section 263 but is the carrying on of the taxpayers' business within

the meaning of Title 26 U.S.C.A. Section 162. The taxpayers would be entitled to deduct their expenses for pruning from ordinary income derived from the tree sales reported as ordinary income, or as capital gains under the provisions of Title 26 U.S.C.A. Section 631.

Assuming that the taxpayers' pruning expenses were capital expenditures before the 1954 Internal Revenue Code was adopted by Congress then they were not deductible from ordinary income under the provisions of Section 23 of the 1939 Internal Revenue Code. Then such tax treatment was known to Congress when it granted tax relief to the ornamental tree growers, the same as was granted to timber growers in the 1951 Amendment to the 1939 Internal Revenue Code.

The government contends that it has always been the intent of Congress with respect to capital gains that a taxpayer allowed to a capital gains treatment on income and report only fifty per cent (50%) of his gain and at the same time, cannot deduct one hundred per cent (100%) of the expenses directly incurred in producing the gain. The case of Watson v. Commissioner, 345 U.S. 544, 547, 73 S.Ct. 848, 97 L.Ed. 1232, is relied upon. That case deals with the sale of land with an annual unharvested crop of oranges prior to the year 1951. The Revenue Act of 1951, Section 24(f), expressly provided that in computing net income of such sale no deduction (whether or not for the taxable year of sale and whether for expenses, depreciation, or otherwise) attributable to the production of such crop shall be allowed. The Court adopted the prospective 1951 Act as its interpretation of the taxpayers' impropriety in deducting cultivating expenses as ordinary business expenses of an annual unharvested crop sold with the land when the sale was treated by the taxpayer as capital gains. The Court fragmented the sale by treating the land as capital gains and the unharvested crop of oranges as ordinary income and distinguished the case from cases involving growing timber (not an annual crop) which could not be so fragmented.

The taxpayers contend that the Congressional history surrounding Title 26 U.S.C.A. Section 631 shows conclusively that Congress intended that they could deduct the expenses in issue as ordinary and necessary expenses paid or incurred in carrying on their business despite the general rule relied upon by the government. The taxpayers rely upon the case of Union-Bag Camp Paper Corporation v. United States, 325 F.2d 730, 163 Ct.Cl. 525 (1963).

The Union-Bag case involved deduction of management expense attributable to negotiation and supervision of timber cutting contracts under Title 26 U.S.C.A. Section 162. The Internal Revenue Commissioner disallowed the deduction and treated it as a direct selling expense offsetting capital gain realized under the contracts. The Union-Bag case recites that Congress favored the timber industry with tax relief by granting it the benefit of capital gains treatment as to timber sales with full knowledge of the industry's problem and did not expressly prohibit deductions under Title 26 U.S.C.A. Section 162, nor did it expressly require the offsetting of such expenses against capital gains from the sale of timber. This Congressional omission the Court states is highly significant for two reasons. In the first place, in other situations when Congress has desired to restrict a tax relief provision by disallowing deduction of related expenses, it has done so by express language. Thus, when Section 117(j) (3) of the 1939 Code was added by the Revenue Act of 1951, in order to provide for the realization of capital gain on the sale of a growing crop together with the land on which it is situated, Section 24(f) was simultaneously added to prohibit the deduction of the expenses of growing such crop. In the second place, during its consideration of legislation which ultimately became the 1954 Code, the House of Representatives passed a provision which would have specifically denied a deduction for the type of ex-

pense here involved. Section 272 H.R. 8300, 83rd Congress, Second Session; see also H.Rept. No. 1337, 83rd Congress, Second Session, pages A67–A68. However, the Senate Finance Committee eliminated this provision with respect to timber, and the Senate's action was accepted by the Conference Committee. S.Rept. No. 1622, 83rd Congress, Second Session, page 229 (1954); H.Rept. No. 2543, 83rd Congress, Second Session, page 33 (1954). That Court further points out that there had been no long standing Treasury Regulation prohibiting the deductions and none was promulgated until the year 1958 some four years after Congress had rejected an amendment to the same effect as the 1958 Regulation. The Court finally held as follows:

"Absent specific language in the statute or regulations so requiring, it should not be held that the taxing authority has with one hand granted a special tax benefit to a natural resource industry, but with the other hand has taken back part of the benefit through the medium of disallowing a deduction to which the taxpayer had previously been entitled."

The taxpayers further cite the case of Drey v. United States, 7 A.F.T.R.2d 333 (D.C.E.D.Mo.1960) as authority for their expenses were not capital expenditures but were ordinary and necessary expenditures in carrying on their business.

The Drey case involved the deduction of wages paid regular woodsmen and cruisers for cruising timber throughout the year under Title 26 U.S.C.A. Section 162. The Court held that the amount paid to woodsmen and cruisers was deductible from income even though a part of the expense was incurred in cruising timber that was afterwards sold in no wise affects the nature of the expenditures.

■■ While the government is correct in asserting that the basic fundamental of the Internal Revenue Codes of the past and present is not to allow the deduction of capital expenses from ordinary income but to offset such against capital gains, nevertheless the Congress can and does digress from the fundamental when granting tax relief. Assuming that the pruning expenses are capital expenditures of the taxpayers, the recited history in this memorandum entry supports the taxpayers' position and entitles them to deduct the expenses from ordinary income in their returns. The plaintiffs are entitled to recover the sum of $3,847.13 plus interest from the date of payment for the year 1960; $6,077.97 plus interest from the date of payment for the year 1961; $6,450.49 plus interest from the date of payment for the year 1962; and $8,530.52 plus interest from the date of payment for the year 1963 and judgment will be so entered.