DANIEL D. KINLEY AND MARGERY R. KINLEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3793–67. Filed March 19, 1969.

*George T. Finnegan,* for the petitioners.
*A. W. Dickinson,* for the respondent.

IRWIN, *Judge:* The respondent determined deficiencies in petitioners' income taxes for the taxable years 1962, 1963, 1964, and 1965 in the amounts of $2,799.15, $3,893.87, $1,766.43, and $3,280.65, respectively. Since respondent has conceded the claimed deduction in 1965 representing the cost of Christmas trees removed during that year, the sole issue remaining for our decision is whether or not petitioners' costs for the shearing of Christmas trees during the taxable years at issue represent nondeductible capital expenditures under sec-

tion 263(a), or ordinary and necessary business expenditures deductible pursuant to section 162(a), I.R.C. 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Daniel D. Kinley (hereinafter petitioner) and Margery R. Kinley, husband and wife,[2] were residents of Greenwich, Conn., on the date they filed their petition in this proceeding. They filed joint Federal income tax returns for the calendar years involved herein with the district director of internal revenue for the District of Massachusetts.

The petitioner owns 340 acres of land in Otsego and Antrim Counties, Mich. During the taxable years involved petitioner was, and still is, engaged in the business of raising Christmas trees on this land.

In the operation of this business, petitioner during each taxable year involved herein, incurred and paid the following expenditures, all of which were claimed as deductions as ordinary and necessary business expenses:

| | 1962 | 1963 | 1964 | 1965 |
|---|---|---|---|---|
| Shearing trees | $3,954.56 | $6,754.38 | $3,301.75 | $3,906.26 |
| Releasing ladybugs | | | | 327.50 |
| Cutting access and fire lanes | | 54.00 | | 57.00 |
| Spraying trees | 360.00 | | 320.00 | 165.00 |
| Removing defective trees: | | | | |
| Labor | 484.75 | | 1,298.75 | 717.50 |
| Cost of trees | 390.00 | | 5,259.00 | 2,070.00 |

The respondent disallowed the deduction for "shearing trees" in each of the taxable years on the grounds that these items represented capital expenditures.

The trees involved in this case are all of the Scotch pine variety. The Scotch pine is not native to this country but is an import from Europe and Scandinavia. The only use for the Scotch pine in this country is as an ornamental Christmas tree and petitioner raised the trees solely for this use. If a Scotch pine does not qualify for the ornamental Christmas tree market, it is termed a "cull" and is destroyed.

In order to qualify for the ornamental Christmas tree market a Scotch pine must have a certain appearance which depends upon its density, shape, color, straightness, and freshness. In petitioner's business, the value and price of a Scotch pine, which has the required marketable appearance, depends upon its height—a tree less than 7 feet tall being worth $1.25, and a tree over 7 feet tall being worth $1.50.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

[2] Margery is a petitioner only because she signed the joint return.

Petitioner's Christmas tree business consists generally of planting, cultivating, and harvesting the trees. These operations are managed for him by the Sno Kist Tree Corp. The trees are machine planted as seedlings. The cultivation period after planting lasts for about 9 years until the tree is harvested.

There are three basic cultural practices utilized in the growing of Scotch pine Christmas trees during the cultivation period. These are weed and brush control, insect control, and shearing.

One of the purposes of weed and brush control is to prevent deformity and damage to the lower branches of the trees. Insect control is a cultural practice carried out to prevent loss of form and density of the trees through insect defoliation. Shearing is carried out to maintain the desired shape and density of the trees by cutting off excessive growth each year. Shearing is a separate, individual, precise operation applied by a worker to each Scotch pine. The operation requires knowledge, training, skill, and care in application. Shearing costs are primarily for labor. They are the greatest cost in raising the trees, amounting to more than 50 percent of the total cost.

Up to the third year after planting, shearing is not necessary since the Scotch pine maintains a rate of growth which produces a normal conical shape which is the basic marketable form of the tree. After the third year the rate of growth of a tree becomes more rapid resulting in wild growth of branches which causes a loss of its prime and basic shape through the extra long terminal leader growing up at the top and wild branches growing laterally out from the sides. It is this growth which is sheared annually beginning the third year and continuing until the tree is cut. The trees are normally not cut until 9 years after planting. Shearing consists of cutting back the terminal leader to a length of about 10 inches and cutting off the wild side branches to restore and maintain the conical shape of a tree. It also involves cutting a "handle" at the trunk of the tree once in the early years. Shearing of trees under 4 feet tall is done with hedge shears. Those over four feet tall are sheared with knives. If shearing is not done each year, the shearing done in prior years is a complete loss and the tree becomes an unmarketable "cull."

The annual shearing of a Scotch pine does not guarantee that it will be a marketable tree since only about 75 percent of the sheared trees are marketable. Shearing does not prolong or increase the life of the Scotch pine; it does not add any material or other matter to the tree, but actually removes part of the tree; it does not adapt the tree to any other use than its sole use as an ornamental Christmas tree; and it does not by itself create a marketable tree which is the only value the tree has. Value is added primarily by the natural process of growth controlled partially by shearing which preserves a tree's potential

value. Shearing also increases the density of a tree by reducing the distance between whorls. Shearing is necessary to achieve a marketable tree. The U.S. Department of Agriculture has established grades for Christmas trees. These are premium, choice, standard, and cull.

The first step in harvesting is the tagging of the trees to be cut. This is usually done in August of each year. Tagging is not for the purpose of grading the trees, but simply for the purpose of indicating the ones to be cut. The tagged trees are sprayed with a green dye or pigment, cut, bundled and shipped.

Petitioner is paid on the basis of the number of his trees which are cut and shipped. The Sno Kist Tree Corp., which manages petitioner's plantations, purchases the trees from petitioner.

### OPINION

Petitioner herein contends that the annual cost he incurred in the years 1962 through 1965 for the shearing of his Scotch pine trees raised for sale as ornamental Christmas trees is an ordinary and necessary business expense and hence deductible pursuant to section 162.[3]

Respondent, while not disputing that these costs were incurred in petitioner's trade or business, contends that the amounts incurred for the shearing are capital expenditures and hence not deductible pursuant to section 263(a).[4]

While the issue is both narrow and close, we think the evidence supports the position of the petitioner.

At the outset it should be mentioned that there is conflicting evidence as to whether or not petitioner's sale of Christmas trees qualified for elective capital gains treatment under section 631. However, we agree with respondent that the treatment of income upon sale of the trees is not dispositive of the issue here involved as to the proper treatment of shearing as an expense item.

There are scant precedents in this area. While Rev. Rul. 66-18, 1966-1 C.B. 59, which was issued after the last taxable year involved herein, supports the position of the respondent, this revenue ruling has been rejected by a District Court in *Ransburg* v. *United States*, 281 F. Supp. 324 (S.D. Ind. 1967). We have also upheld a position similar to petitioner's herein in *Estate of Richard R. Wilbur*, 43 T.C. 322,

---

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[4] SEC. 263. CAPITAL EXPENDITURES.

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *

324 (1964).[5] Upon examination of the cultural practices involved herein, we agree with these holdings and do not agree with respondent's position as set forth in the ruling and as argued herein.

One of the major differences between the positions of the parties herein appears to us to be conceptual. Respondent contends that petitioner grew Scotch pine trees which were converted into marketable Christmas trees by the annual shearings. Petitioner, on the other hand, contends that he planted Christmas trees which, through proper care during their growth, matured into marketable trees.

If shearing adds value to the trees or adapts them to any use other than their initially intended use, then the cost of shearing would be considered a capital expenditure under section 263(a). That section defines such an expenditure as "Any amount paid out * * * for permanent improvements or betterments made to increase the value of any property * * *."

We believe, for the reasons set forth below, that shearing did not permanently improve, better or otherwise increase the value of the trees. Rather it simply maintained and preserved the value of the trees. See respondent's regulations sec. 1.263(a)–1 and 1.263(a)–2.

Petitioner grew Scotch pine trees only. Their sole use in this country is as ornamental Christmas trees and petitioner raised the trees for this use. It seems clear to us that seedlings planted by petitioner were planted as Christmas trees. However, in order for these trees to mature into marketable trees the cultural practices of weed, brush, and insect control and shearing had to be followed on a recurring basis. Respondent does not object to the classification of weed, brush, and insect control as ordinary and necessary business expenses. However, he contends that shearing, which constitutes more than 50 percent of the cost of raising the trees, is a capital expenditure.

It is true, as respondent points out, that if a tree is not sheared it will become a "cull" and will have to be destroyed because it has no value. It is only through the practice of shearing that the tree acquires the proper shape and density for it to have a marketable quality. However, this process must be performed annually to control the extent and manner of growth. If a tree is not sheared in any year after approximately its third year, the advantage of previous annual shearings is lost. This is certainly indicative of a maintenance expenditure. Furthermore, shearing does not prolong or increase the life of the tree. It does not add any material to the tree or adapt it to any other use than its sole use as a Christmas tree. As petitioner points out, one cannot adapt to a new or different use something that has only one use. Value

---

[5] See also *Robert L. Maple,* T.C. Memo, 1968–194.

is added to the tree by the natural process of growth controlled by all the cultural practices performed by petitioner, including shearing.

The shearing expenses were not incurred primarily to prepare the trees for market but were ongoing, recurring expenses which were ordinary and necessary in order to preserve and maintain the marketability of the trees as ornamental Christmas trees. Hence they are deductible under section 162(a).

To reflect respondent's concession as to the deduction for removing Christmas trees in the taxable year 1965,

*Decision will be entered under Rule 50.*

Reviewed by the Court.