John T. **CASEY** and **Margaret B.** Casey,
Husband and Wife,

v.

The **UNITED STATES.**

No. 34–70.

United States Court of Claims.

May 12, 1972.

Eugene E. Feltz, Portland, Or., attorney of record, for plaintiffs.

Seth Stopek, Washington, D. C., with whom was Scott P. Crampton, Asst. Atty. Gen., for defendant. Phillip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

OPINION

KASHIWA, Judge.

This is an action by taxpayers, husband and wife, who were members of a joint venture engaged in certain phases of the lumbering business, for a refund of federal income taxes paid for the calendar years 1960 and 1961. The sole question involved is whether the plaintiffs' proportionate shares of the amortized cost of access logging roads are (1) as plaintiffs contend, deductible as ordinary and necessary business expenses under § 162 of the Internal Revenue Code of 1954,[1] or (2) as the Government contends, capital in nature constituting part of the adjusted depletion basis (cost) of the timber sold under § 631(b),[2] thereby reducing the capital gain derived from the sale of the timber.

■ We agree with the Government's contention that such amortized costs are capital in nature, thereby reducing the capital gain derived from the sale of the timber.

All material facts were stipulated. Plaintiffs, residents of Portland, Oregon, possessed a 28 percent interest in a

---

1. "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * *."

2. "In the case of the disposal of timber held for more than 6 months before such disposal, by the owner thereof under any

form or type of contract by virtue of which such owner retains an economic interest in such timber, the difference between the amount realized from the disposal of such timber and the adjusted depletion basis thereof, shall be considered as though it were a gain or loss, as the case may be, on the sale of such timber. * *"

joint venture, formed in April, 1960, and known as "Idapine-Tenants-In-Common" (hereinafter referred to as "joint venture"). The joint venture purchased the assets of a partnership known as Idapine Company which was engaged in the lumbering business. The assets acquired consisted of logging equipment, plants, timber, timber contracts, cutting rights with the United States Forest Service and others, and all of the capital stock of Idapine Mills, Inc., the partnership's operating company. Under the contracts with the Forest Service, the joint venture agreed to pay for the timber cut and removed, based on a specified stumpage rate per thousand board feet cut and removed. The contracts provided for cutting of merchantable timber designated by the Forest Service, with no limitations based on annual growth. The joint venture further agreed to construct access logging roads to the stands of timber covered by the contracts. The logging equipment and plants of the joint venture were then leased to Idapine Mills, Inc.

The joint venture constructed the access logging roads as required by the Forest Service contracts. During the years 1960 and 1961, the joint venture disposed of part of the timber under the Forest Service contracts to Idapine Mills, Inc., payment for which was to be based upon a specified stumpage rate per thousand board feet cut and removed. Income from the sale of timber was treated by the joint venture as capital gain under § 631(b), and rentals were treated as ordinary income.

The costs of constructing the access logging roads were amortized by the joint venture, including plaintiffs, based upon the quantity of timber it sold. Plaintiffs' proportionate shares of the amortized cost of the access roads were $23,415.81 and $18,317.75 for the years 1960 and 1961, respectively. They claimed deductions for these amounts on their joint income tax returns as ordinary and necessary business expenses. The Commissioner of Internal Revenue

disallowed the deduction from ordinary income and treated the expense as capital in nature, part of the cost of the timber sold, and thereby applied it to reduce the capital gains derived from the sale of the timber. Timely assessments of additional income taxes and interest followed the determination by the Commissioner. Plaintiffs paid the assessments and filed timely claims for refund which were subsequently disallowed. This timely suit for refund was filed in this court on February 2, 1970.

A case involving another member of the same joint venture, Dorothy C. Regan, dealing with the taxable years 1960, 1961, and 1962 and the same issues presented in this case, was before the United States Court of Appeals, Ninth Circuit, in United States v. Regan, 410 F.2d 744 (1969), cert. denied 396 U.S. 834, 90 S.Ct. 91, 24 L.Ed.2d 85. The court concluded as follows:

Are expenditures for building access roads capital expenses? We think they are. Commercial exploitation of the timber would not have been possible without the construction of the roads to reach the trees. The roads are directly related to the acquisition and disposal of the timber. The expenses in road building should be offset against capital gains realized on the disposition of the timber. [410 F.2d at 746].

The above Ninth Circuit decision not only reversed the decision below of the United States District Court for the District of Oregon, 20 AFTR 2d 5759 (1967), but it went further and disapproved anything contrary in Watts v. Erickson, 10 AFTR 2d 5832 (D.C.Ore. 1962), and Converse v. Earle, 43 AFTR 1308 (D.C.Ore.1951). Plaintiffs herein rely very much on these two cases, but *Converse* and *Watts* are no longer the law in the Ninth Circuit. A careful reading of Drey v. United States, 7 AFTR 2d 333 (E.D.Mo.1960) and Alabama Mineral Land Co. v. Commissioner of Internal Revenue, 28 B.T.A. 586 (1933), both involving mainly cruising expenses not directly related to the dis-

posal of timber, shows nothing inconsistent with the result reached herein. Furthermore, *Alabama* was decided many years before the enactment of the timber-related capital gain provisions in 1943 (§§ 117(k) (1) and (k) (2) of the Internal Revenue Code of 1939). Kinley v. Commissioner of Internal Revenue, 51 T.C. 1000 (1969), and Ransburg v. United States, 281 F.Supp. 324 (S.D.Ind. 1967), were based on findings of fact that the sharing and basal pruning of trees grown for the Christmas tree market simply maintained and preserved the marketability of the trees. As such, these costs were deductible business expenses. See Rev.Rul. 71–228, 1971–1 Cum.Bull. 53. In Rev.Rul. 71–334, 1971 Int.Rev.Bull. No. 30, at 32, the IRS concludes that all expenditures directly related to a disposal of timber under § 631(b) must be offset against the capital gains received on such disposal, citing *Regan, supra, inter alia.*

Taxpayers urge that the Government's position herein is very similar to that which was rejected in Union Bag-Camp Paper Corp. v. United States, 325 F.2d 730, 163 Ct.Cl. 525 (1963).[3] While the Government's position may bear some similarity, we believe that the expenses involved are factually different. In *Union Bag,* the taxpayer entered into long term leases of timber lands to insure a constant supply of pulpwood for its paper manufacturing business. One of the issues therein involved the plaintiff's business activities in selling timber under cutting contracts with others pursuant to § 631(b). It deducted under § 162 certain related costs, mostly for salaries, depreciation, supplies, repairs, travel, entertainment and insurance, as forest management expenses. The Government argued that five percent of the total expenses should be considered attributable to negotiation and supervision of the contracts (i. e., an expense of sale) and, consequently, should be used to reduce the capital gain therefrom. This court did not accept that argument

because it found (1) that the negotiation and supervision were only incidental to the overall management function and (2) that there was no statutory support in § 631(b) for such an allocation. Therefore, it allowed the full amount of the management expenses to be deducted under § 162. The cost of the road, in the case before us, is quite another matter than management expenses. For one thing, the Forest Service contract *required* its construction by the joint venture. Therefore, we think that the cost of the cutting rights acquired by the joint venturers necessarily must have been affected by the cost of the road. Presumably, if the Forest Service had paid for the road, it would have increased the stumpage price payable by the joint venture, and if the road cost had been passed on to a third party transferee of the cutting rights, the stumpage rate would have been lesser than it actually was. In either case, the result would have been reduced capital gain, which conforms to the result we reach by adding the cost to the adjusted depletion basis. §§ 612, 1012, 1016. Thus, we believe that the cost of the road was incurred in order to acquire a capital gain, and it should be treated just as any other capital expenditure. § 263; Woodward v. Commissioner of Internal Revenue, 397 U.S. 572, 574–576, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); Towanda Textiles, Inc. v. United States, 180 F.Supp. 373, 377, 149 Ct.Cl. 123, 131 (1960). This is borne out by Treas.Reg. § 1.631–2(e) (1) which provides that amounts paid in the acquisition of timber cutting rights, however designated, "shall be treated as the cost of the timber and constitute part of the lessee's depletable basis of the timber, * * *." That the amounts were paid directly to the road-builder, rather than to the Forest Service and then to the road-builder, makes no difference.

■ A further reason for our conclusion is found in the intent behind the enactment of § 631(b) and its predeces-

3. See also Union Bag-Camp Paper Corp. v. United States, 366 F.2d 1011, 177 Ct. Cl. 212 (1966) (same result in later taxable years).

sor which was to allow taxpayers who dispose of timber or cutting rights with a retained economic interest to receive capital gain treatment, thus putting them on an equal footing with those taxpayers who sell their timber stands outright. S.Rep. No. 627, 78th Cong., 1st Sess. 25–26 (1943), 1944 Cum.Bull. 993. To adopt plaintiffs' argument is to create another state of unequal treatment, the converse of the earlier undesirable situation, because it would confer an even greater benefit on those who dispose of their property with a retained economic interest. We cannot allow such a result where there is such a clear Congressional intent to the contrary.

Lastly, taxpayer cites certain language of the Trial Commissioner in Union Bag, 325 F.2d at 744, 163 Ct.Cl. at 549, to the effect that the Government's position would take away a benefit previously available. The Government did not take exception to that language, so it was not argued before this court. We believe that this was dictum having no bearing on the present controversy. To whatever extent it is applicable, it should be confined to the type of management expenses involved in *Union Bag.*

For the foregoing reasons, we find that plaintiffs are not entitled to deduct the cost of the road as an ordinary and necessary business expense. Accordingly, the petition is dismissed.

## FINDINGS OF FACT

The court, having considered the stipulation of the parties, and the briefs and arguments of counsel, makes findings of fact as follows:

1. This is a civil action for the refund of federal income taxes for the years 1960 and 1961.

2. Taxpayers are husband and wife, residents of Portland, Oregon, citizens of the United States, and they timely filed joint federal income tax returns for the years in issue with the District Director of Internal Revenue of Portland.

3. Taxpayers were members of a joint venture, in which they possessed a 28 percent interest, formed April, 1960, and known as "Idapine-Tenants-In-Common." Idapine Tenants purchased the assets of a partnership known as Idapine Company which was engaged in the lumbering business. The assets acquired consisted of logging equipment, plants, timber, timber contracts, cutting rights with the United States Forest Service and others, and all of the capital stock of Idapine Mills, Inc.

4. Under the contracts with the Forest Service, the Idapine Tenants agreed to pay for the timber cut and removed based on a specified stumpage rate per thousand board feet cut and removed. The contracts provided for cutting of merchantable timber designated by the Forest Service, with no limitations based on annual growth. The Idapine Tenants further agreed to construct access logging roads to the stands of timber covered by the contracts.

5. The logging equipment and plants of the Idapine Tenants were then leased to the corporation, Idapine Mills, Inc., the wholly-owned operating company of said Tenants. The Idapine Tenants constructed the access logging roads as required by the Forest Service contracts. During the years 1960 and 1961, the Idapine Tenants disposed of part of their timber under the Forest Service contracts to Idapine Mills, Inc., payment for which was to be based upon a specified stumpage rate per thousand board feet cut and removed.

6. The costs of constructing the access logging roads were amortized by the joint venture, including taxpayers, based upon the quantity of timber sold. Taxpayers' proportionate share of the amortized cost of the access roads was $23,415.81 and $18,317.75 for the years 1960 and 1961, respectively. Taxpayers claimed a deduction for these amounts on their income tax returns as an ordinary and necessary business expense.

7. The Commissioner of Internal Revenue disallowed the deduction from ordinary income and treated the expense as

capital in nature, part of the cost of the timber sold, and thereby as a reduction of the capital gains derived from the sale of the timber.

8. Timely assessments of additional income taxes and interest followed the determination by the Commissioner. Taxpayers paid the assessments and filed timely claims for refund which were subsequently disallowed. This timely suit for refund followed.

## CONCLUSION OF LAW

Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover and the petition is dismissed.